IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 25, 2020

## STATE OF TENNESSEE v. BLAKE GREGG

**Appeal from the Criminal Court for Sullivan County**
**Nos. S68435, S68680, S69303, S69502     James F. Goodwin, Jr., Judge**

_____

### No. E2019-00843-CCA-R3-CD

_____

The defendant, Blake Gregg, appeals from his Sullivan County Criminal Court guilty-pleaded convictions in multiple case numbers of possession of methamphetamine, two counts of possession with intent to sell .5 grams or more of methamphetamine, possession of oxycodone, possession of buprenorphine, possession of clonazepam, introduction of contraband into a penal institution, domestic assault, aggravated domestic assault, evading arrest, driving under the influence ("DUI"), two counts of driving on a suspended license, one count of second or subsequent offense of driving on a suspended license, driving while in possession of methamphetamine, theft of property valued at $1,000 or more but less than $2,500, four counts of possession of drug paraphernalia, running a stop sign, violating the vehicle light law, and two counts of violating the financial responsibility law. In this appeal, the defendant asserts that the trial court erred by ordering that he serve the 10-year sentence imposed in case number S68680 in confinement. Discerning no error, we affirm.

### Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and, ROBERT H. MONTGOMERY, JR., JJ., joined.

Wesley A. Mink (on appeal) and Steve Bagby (at trial), Assistant District Public Defenders, for the appellant, Blake Gregg.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Kristen Rose, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The convictions in this case arose from a global plea agreement to dispose of the charges in Sullivan County case numbers S68435, S68680, S69303, and S69502. We outline the original charges and conviction offenses below:

| Case Number | Charged Offense | Conviction Offense/Sentence |
|---|---|---|
| S68435 | Driving on a suspended license | Same, six months |
| S68435 | Violating financial responsibility law | Same, fine only |
| S68435 | Possession of methamphetamine | Same, 11 months and 29 days |
| S68435 | Introduction of contraband into a penal facility | Same, three years |
| S68680 | Possession with intent to sell or deliver .5 grams or more of methamphetamine in a drug-free zone | Possession with intent to sell .5 grams or more of methamphetamine, 10 years |
| S68680 | Possession of oxycodone | Same, 11 months and 29 days |
| S68680 | Possession of buprenorphine | Same, 11 months and 29 days |
| S68680 | Possession of clonazepam | Same, 11 months and 29 days |
| S68680 | Running a stop sign | Same, fine only |
| S68680 | Violating financial responsibility law | Same, fine only |
| S69303 | Domestic Assault | Same, merged with S69303 count 2 |
| S69303 | Aggravated domestic assault | Same, three years |
| S69303 | Evading arrest | Same, 11 months and 29 days |
| S69502 | Possession with intent to sell or deliver .5 grams or more of methamphetamine | Same, eight years |
| S69502 | Theft of property valued at $1,000 or more but less than $2,500 | Same, two years |
| S69502 | DUI | Same, 11 months and 29 days |
| S69502 | Driving on a suspended license | Same, merged with S69502 count 11 |
| S69502 | Driving while in possession of methamphetamine | Same, fine only |
| S69502 | Possession of drug | Same, 11 months and 29 days |

| | paraphernalia | |
|---|---|---|
| S69502 | Possession of drug paraphernalia | Same, 11 months and 29 days |
| S69502 | Possession of drug paraphernalia | Same, 11 months and 29 days |
| S69502 | Possession of drug paraphernalia | Same, 11 months and 29 days |
| S69502 | Violation of vehicle light law | Same, fine only |
| S69502 | Second offense driving on a suspended license | Same, 11 months and 29 days |

Pursuant to the agreement, the sentences imposed for convictions within each case were aligned concurrently to one another, and the total effective sentences for the four cases were aligned consecutively to each other, for a total effective sentence of 24 years with the manner of service of the sentence to be determined by the trial court.

At the guilty plea submission hearing, the defendant stipulated to the statement of facts contained within the affidavits of complaints in each of the cases. Because the defendant does not challenge the factual basis supporting any of the conviction offenses, we will not recite them here.[1]

At the sentencing hearing, the defendant testified that, since being incarcerated, he had completed a number of self-improvement classes. He noted that the majority of his criminal history occurred following the death of his father and his best friend within two weeks of one another in 2016. From that point, he said, "everything just spiraled out of control," and he "did resort to self-medicating." He acknowledged that he lost his driver's license following a DUI conviction in 2007 and that he "was not able due to financial reasons" to have his license reinstated. The defendant read into the record a statement he had prepared for the hearing. In the statement, the defendant took responsibility for his actions and asked the court to place him in "the TN ROCS Program."[2] The defendant said that, following any such placement, he would live with

---

[1]     The defendant entered a "best interests" plea of guilty in each of the counts in case number S69303.

[2]

> Developed by Judge Duane Slone, the Tennessee Recovery Oriented Compliance Strategy (TN-ROCS) Program is a court diversion strategy that serves justice-involved adults who have serious mental illness (SMI), mental illness (MI), co-occurring disorders (COD) or substance abuse disorders and who have low to medium risk factors for re-offending and medium to high needs for substance abuse and mental health services. This model provides an option for judges to address the needs of defendants who do not meet criteria for recovery court or do not

his grandmother. He said that he had two daughters, one who lived with her mother's mother and one who lived with his mother. The defendant testified that a friend had offered him a job as a roofer "as soon as I can get the available time."

The defendant said that, despite having been placed on probation before, he had never been ordered to attend any drug or alcohol treatment. He stated that he had taken a drug and alcohol assessment as part of a previous sentence of probation and that he had taken "some kind of class" but that he had never participated in an inpatient drug treatment program.

During cross-examination, the defendant acknowledged that, even without the myriad convictions at issue, his criminal history was extensive. He admitted that he had violated the terms of probationary sentences imposed in the past. The defendant conceded a long history of drug abuse but said that he could not recall from whom he had purchased drugs in the past.

The court observed that the defendant "started having a problem with the truth" during his testimony, emphasizing the defendant's statement "that he doesn't know who he bought his drugs from." The court opined that the defendant was "trying to protect somebody" and noted its concern that it would be unable to "fashion some sort of an order or a remedy to keep him away from those people." The court stated that it did not believe the defendant's testimony that he had never been offered drug treatment while on probation in the past. Based upon the defendant's lack of candor as well as "his lengthy criminal history" and "his violations of attempts at release into the community," the trial court ordered the defendant to serve the 10-year sentence imposed in case number S68680 in confinement and the remaining 14 years of his total effective sentence on supervised probation. The court indicated that it would reevaluate the defendant's placement in the TN-ROCS Program following his completion of the term of incarceration for case number S68680.

The presentence report established that, in addition to the 24 conviction offenses at issue in this appeal, the 31-year-old defendant had more than two dozen prior

---

want to participate in recovery court.

TN-ROCS service recipients are ordered by a judge to take part in the program. Service recipients must comply with their release plan and supervision requirements, as well as appear in court as requested by the judge. Service recipients can stay in the community as long as they follow the program. Review dockets are held to ensure the service recipients are following the program.

https://www.tn.gov/behavioral-health/substance-abuse-services/criminal-justice-services/tn-rocs.html

misdemeanor convictions. His criminal history spanned the entirety of his adult life.

In this timely appeal, the defendant contends that the trial court erred by imposing a fully incarcerative sentence. The State asserts that the record supports the denial of alternative sentencing.

Our supreme court has adopted an abuse of discretion standard of review for sentencing and has prescribed "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The application of the purposes and principles of sentencing involves a consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5). Trial courts are "required under the 2005 amendments to 'place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing.'" *Bise* 380 S.W.3d at 698-99 (quoting T.C.A. § 40-35-210(e)). The abuse-of-discretion standard of review and the presumption of reasonableness also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

Although the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence, *see* T.C.A. § 40-35-103(5), "[c]onvicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation" are not considered favorable candidates for alternative sentencing, *id.* § 40-35-102(5)-(6)(A).

When a trial court orders confinement and therefore rejects any form of alternative sentencing such as probation, split confinement, or periodic confinement, it must base the decision to confine the defendant upon the considerations set forth in Code section 40-35-103(1), which provides:

> (1) Sentences involving confinement should be based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant; . . . .

T.C.A. § 40-35-103(1).

In our view, the trial court did not abuse its discretion by ordering a sentence of confinement in this case. The record indicates that the defendant had a long history of criminal convictions and that he had frequently failed to comply with the terms of his probation. Although the trial court relied heavily on the defendant's lack of candor, the court also specifically considered both the defendant's criminal history and his failure to comply with sentences involving release into the community. The record supports the trial court's finding that measures less restrictive than confinement had frequently and recently been applied unsuccessfully to the defendant.

Accordingly, we affirm the judgments of the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE